UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Country Mutual Insurance Co.,

    Plaintiff,

    v.                                                                    Civil Action No. 2:19-cv-74-jmc

Altisource Online Auction, Inc.,

    Defendant.

**OPINION AND ORDER**
(Doc. 31)

Plaintiff Country Mutual Insurance Company, individually and as successor to Middlesex Mutual Assurance Company as subrogee of TPW Management LLC (TPW), brings this action against Defendant Altisource Solutions, Inc.,[1] a property management company, for negligence, breach of contract, and breach of implied warranties.[2]  Plaintiff alleges that Defendant failed to winterize a property that it was contracted to winterize, resulting in significant water damage to the property. (Docs. 1, 26.)

---

[1] According to Defendant, it is erroneously named as "Altisource Online Auction, Inc." in the Amended Complaint.  (Docs. 26 at 1, 31 at 1.)

[2] Because the Court has diversity jurisdiction over this matter, pursuant to 28 U.S.C. § 1332(a)(1), it must apply Vermont law in deciding all substantive issues.  *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *see also Omega Eng'g Inc. v. Omega, S.A.*, 432 F.3d 437, 443 (2d Cir. 2005) ("In a diversity case we apply the substantive law of the forum state . . . .").

Now pending before the Court is Defendant's Motion to Dismiss (Doc. 31). Oral argument on the Motion was held via telephone on June 5, 2020. For the reasons stated below, the Motion is GRANTED.

## Factual and Procedural Background

Plaintiff states that it provided property insurance to TPW, a condominium association responsible for a condominium located at 2680 Hartford Avenue, Unit 10 in Wilder, Vermont. (Doc. 26 at 1–2, ¶¶ 3–4.) Plaintiff alleges that Defendant was retained to winterize the condominium but failed to do so. (*Id.* at 2, ¶¶ 9–10.) Plaintiff does not attach the alleged contract to the Complaint or specify who retained Defendant; instead, Plaintiff states that, "[u]pon information and belief, a contract involving winterizing the subject property existed between [Defendant] and the party in whose care, custody and control the subject property was as of January 19, 2015." (*Id.* at 4, ¶ 17.) On that date, allegedly as a result of Defendant's failure to properly winterize the property, the sprinkler system froze and burst, causing substantial water damage to the unit. (*Id.* at 2, ¶ 10.) Plaintiff contends that it sustained in excess of $75,000 in damages and expenses. (*Id.* at 3, ¶ 11.) It asserts claims of negligence, breach of contract, and breach of implied warranties. (*Id.* at 3, 4, 6.)

On November 1, 2019, Defendant filed the instant Motion to Dismiss. (Doc. 31.) It argues that Plaintiff's negligence claim is barred by the economic loss rule because Plaintiff fails to allege any injury outside the scope of the alleged contract and because Plaintiff fails to allege Defendant owed it an independent duty.

2

(*Id.* at 3–4.) Defendant further argues that Plaintiff's breach-of-contract claim must be dismissed because it fails to sufficiently plead facts supporting the existence of a contract or its subrogor's right to recover as a third-party beneficiary. (*Id.* at 4–7.) Finally, Defendant contends that Plaintiff's claim for breach of implied warranties should be dismissed because Plaintiff fails to establish contractual privity. (*Id.* at 7.)

<u>Analysis</u>

I.     **Legal Standard**

In evaluating whether to dismiss a complaint for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), the court tests the pleading for "facial plausibility." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This does not require a plaintiff to provide "detailed factual allegations" to support his claims, *Twombly*, 550 U.S. at 555, but plaintiffs must allege facts that permit "more than a sheer possibility that a defendant has acted unlawfully," *Iqbal*, 556 U.S. at 678. Accordingly, allegations that "are so vague as to fail to give the defendants adequate notice of the claims against them," are subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009); *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.").

In assessing the adequacy of the pleadings, a court must accept all factual assertions as true and draw all reasonable inferences in favor of the plaintiff. *Lanier v. Bats Exch., Inc.*, 838 F.3d 139, 150 (2d Cir. 2016). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *see Twombly*, 550 U.S. at 555, 557 (holding that a pleading containing "a formulaic recitation of the elements of a cause of action," "labels and conclusions," or "naked assertion[s]" devoid of factual enhancement, does not satisfy Federal Rule of Civil Procedure 8(a)). A complaint is properly dismissed where, as a matter of law, "the allegations in [it], however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## II.  Negligence Claim

Defendant argues that Plaintiff's negligence claim is barred by the economic loss rule. (Doc. 31 at 3–4.) "The economic loss rule 'prohibits recovery in tort for purely economic losses.'" *Long Trail House Condo. Ass'n v. Engelberth Constr., Inc.*, 2012 VT 80, ¶ 10, 192 Vt. 322, 59 A.3d 752 (quoting *EBWS, LLC v. Britly Corp.*, 2007 VT 37, ¶ 30, 181 Vt. 513, 928 A.2d 497). It "serves to maintain a distinction between contract and tort law." *Id.* As the Vermont Supreme Court has explained:

> In tort law, duties are imposed by law to protect the public from harm, whereas in contract the parties self-impose duties and protect themselves through bargaining. Thus, negligence actions are limited to

> those involving unanticipated physical injury, and claimants cannot seek, through tort law, to alleviate losses incurred pursuant to a contract.

*EBWS, LLC*, 2007 VT 37, ¶ 30 (internal citation and quotation marks omitted). The economic loss rule "does not bar tort claims when the claim is that negligent work damages *other* property," which was not the subject of a contract. *Cincinnati Ins. Co. v. S. Vt. Sprinkler Servs., Inc.*, Case No. 5:17-cv-254, 2019 WL 5698930, at *4 (D. Vt. July 10, 2019). However, "injury to the product or property that is the subject of a contract is generally considered a disappointed economic expectation for which relief lies in contract rather than tort law." *Walsh v. Cluba*, 2015 VT 2, ¶ 28, 198 Vt. 453, 117 A.3d 798.

Here, Plaintiff broadly alleges that Defendant was contracted "to winterize the subject property"—specifically, Unit 10 of the condominium building. (Doc. 26 at 1–2, ¶¶ 4, 9.) Plaintiff states that Defendant's failure to do so caused "a substantial water leak[,] resulting in damages *to the subject property*." (*Id.* at 2, ¶ 10 (emphasis added).) As alleged, the damages Plaintiff asserts it (or its subrogor) incurred fall within the broad scope of the purported contract. *See Walsh*, 2015 VT 2, ¶ 29 (applying economic loss rule because alleged damage to leased commercial property was covered by broad scope of the contract, i.e., the lease agreement for the commercial property). More plainly, Plaintiff claims that it suffered damage to "the subject property"—Unit 10—which was precisely the subject of the alleged contract. Therefore, because Plaintiff fails to allege in the Amended Complaint that it

5

sustained damage to "*other* property," which was not the subject of a contract, the economic loss rule bars Plaintiff's negligence claim.[3]

In support of its claims, Plaintiff points to *Cincinnati Insurance Co.*, 2019 WL 5698930, and *Moffitt v. Icynene*, 407 F. Supp. 2d 591 (D. Vt. 2005). However, Plaintiff's reliance on those cases is misplaced because, unlike here, the plaintiffs in both *Cincinnati Insurance* and *Moffitt* alleged damage to property outside the scope of the involved contracts. In *Moffitt*, the contract at issue related solely to the installation of a particular type of insulation in the plaintiffs' home. The plaintiffs there alleged that the defendant's negligence caused property damage to other aspects of the home. Thus, the economic loss rule did not apply "[s]ince the [plaintiffs] [sought] to recover for physical damage to *other* property." *Moffitt*, 407 F. Supp. 2d at 601 (emphasis added). Similarly, in *Cincinnati Insurance*, the contract concerned the testing, maintenance, and repair of a sprinkler system in an assisted-living facility. When the system's pipes froze and burst in the winter, it caused damage to the sprinkler system as well as water damage to twelve rooms in the facility. Because the plaintiff, as subrogee of the facility, sought "to recover repair costs for damage to property not covered by [the subrogor's] maintenance contract," the economic loss rule did not bar the plaintiff's tort claims. *Cincinnati Ins. Co.*, 2019 WL 5698930, at *4. By contrast, in this case, Plaintiff alleges only that it

---

[3] At oral argument, Plaintiff indicated that a neighboring unit was also damaged as well as surrounding common areas. However, such damage is not alleged in the Amended Complaint. Therefore, the Court does not consider it for purposes of deciding the instant Motion to Dismiss.

6

incurred damage to property that was the subject of the contract. Accordingly, the economic loss rule precludes Plaintiff's tort claim.

Moreover, the Vermont Supreme Court has made clear that privity of contract is not a prerequisite to application of the economic loss rule.[4] In *Long Trail*, the Vermont Supreme Court rejected the plaintiff's argument that the economic loss rule should not bar its claims because it didn't share contractual privity with the defendant. The court explained: "Privity, or lack thereof, is not the determining factor, nor are we persuaded that the rule's application turns on whether the parties had the opportunity to allocate risks, as the [plaintiff] suggests. Instead, the focus is more appropriately on duty . . . ." *Long Trail*, 2012 VT 80, ¶ 13. Thus, the determining factor is whether there is "a duty separate and apart from a contractual duty." *Id.*; *see also Springfield Hydroelectric Co. v. Copp*, 172 Vt. 311, 316, 779 A.2d 67, 71–72 (2001) ("The underlying analysis turns on whether there is a duty of care *independent* of any contractual obligations." (internal quotation marks omitted)).

---

[4] The Vermont Supreme Court has applied the economic loss rule in the absence of contractual privity in several cases, including cases involving alleged property damage. *See Long Trail*, 2012 VT 80, ¶¶ 11–13 (applying economic loss rule to bar plaintiff condominium association's claims for damages stemming from alleged faulty construction of condominium, including water damage to walls in specific units, where no privity); *Hamill v. Pawtucket Mut. Ins. Co.*, 2005 VT 133, ¶¶ 6–8, 179 Vt. 250, 892 A.2d 226 (applying economic loss rule to bar insured homeowner's claim, alleging water damage to home, against independent adjuster hired by his insurer to investigate the insured's initial claim); *Springfield Hydroelectric Co. v. Copp*, 172 Vt. 311, 316, 779 A.2d 67, 72 (2001) (applying economic loss rule to bar claims by owners of commercial hydroelectric facilities against employees of Vermont Power Exchange because "neither privity of contract, nor a special relationship, exist[ed] between [the parties] which would permit a finding of duty on the part of [the defendants]"); *but see Sullivan v. Saint-Gobain Performance Plastics Corp.*, 431 F. Supp. 3d 448, 453 (D. Vt. 2019) ("Vermont cases applying the economic loss rule are generally confined to claims between parties to a contract.").

In this case, Plaintiff has not alleged that Defendant owed it or its subrogor any independent, non-contractual duty.  Plaintiff asserts only that Defendant "owed subrogor a duty of care to . . . ensure that the subject property was winterized properly." (Doc. 26 at 3, ¶ 13.)  Despite Plaintiff's attempt to characterize its claims as negligence-based, the duty Defendant allegedly owed arose solely out of its purported contractual obligation "to winterize the subject property." (*Id.* at 2, ¶ 9; *see also id.* at 4, ¶ 17.)  Indeed, Plaintiff claims that its damages are a result of Defendant's failure to properly winterize the subject property, i.e., its failure to fulfill its contractual duty.  Because Plaintiff fails to allege that Defendant owed it or its subrogor any non-contractual duty, the economic loss rule applies.  "Without a legal duty of care, an action for negligence cannot stand." *Wentworth v. Crawford and Co.*, 174 Vt. 118, 126, 807 A.2d 351, 357 (2002) (citing *Gus' Catering, Inc. v. Menusoft Sys.*, 171 Vt. 556, 559, 762 A.2d 804, 808 (2000)).  Accordingly, Defendant's Motion to Dismiss Plaintiff's negligence claim is GRANTED.

### III.    Breach-of-Contract Claim

Defendant argues that Plaintiff's breach-of-contract claim should be dismissed because it has not shown that it (or its subrogor) was a party to or a third-party beneficiary of the alleged contract. (Doc. 31 at 4–7.)  In a breach-of-contract action, it is axiomatic "that to have a breach, there must be a contract." *Ben & Jerry's Homemade, Inc. v. Coronet Priscilla Ice Cream Corp.*, 921 F. Supp. 1206, 1212 (D. Vt. 1996).  Moreover, in order to maintain such a suit, a plaintiff must have the right to recover under the alleged contract, either as a party to the contract or an

8

intended third-party beneficiary of it. *See Post v. Killington, Ltd.*, No. 5:07–CV–252, 2010 WL 3323659, at *7 (D. Vt. May 17, 2010) ("Under Vermont law, in general, no one can sue or be sued upon a contract who is a stranger to it." (internal quotation marks omitted)); *Wells Fargo Bank, N.A. v. Sinnott*, No. 2:07 CV 169, 2009 WL 3157380, at *11 (D. Vt. Sept. 25, 2009) ("A person who is not a party to a contract has no rights under the contract, with the possible exception of third-party beneficiaries.").

"The determination of whether a party may be classified as a third-party beneficiary, as opposed to an incidental beneficiary, is based on the original contracting parties' intention." *McMurphy v. State*, 171 Vt. 9, 16, 757 A.2d 1043, 1049 (2000). "In order to establish third-party beneficiary status, [the] 'plaintiff must prove that the primary purpose and intent of the [contractual] relationship was to benefit or influence the third party.'" *Wells Fargo Bank, N.A.*, 2009 WL 3157380, at *11 (second alteration in original) (quoting *Hedges v. Durrance*, 175 Vt. 588, 590, 834 A.2d 1, 4 (2003)); *see also Morrisville Lumber Co. v. Okcuoglu*, 148 Vt. 180, 184, 531 A.2d 887, 890 (1987) (plaintiff claiming third-party beneficiary status must show the parties "entered into their agreement in contemplation of conferring a benefit on the plaintiff"); Restatement (Second) of Contracts § 302(1) ("[A] beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and . . . the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.").

"Because third-party beneficiary status constitutes an exception to the general rule that a contract does not grant enforceable rights to nonsignatories, a person aspiring to such status must show with special clarity that the contracting parties intended to confer a benefit on him." *Wells Fargo Bank, N.A.*, 2009 WL 3157380, at *11 (quoting *McCarthy v. Azure*, 22 F.3d 351, 362 (1st Cir. 1994)). These requirements are not satisfied, and a third party does not have enforcement rights, merely because a contract will benefit the third party. "Many contracts benefit third parties, but those third parties are treated as incidental beneficiaries" unless the contract was entered into for their direct, and not incidental, benefit. *Sutton v. Vt. Reg'l Ctr.*, 2019 VT 71, ¶ 66; *see also McMurphy*, 171 Vt. 9, 17, 757 A.2d 1043, 1049 (citing *Estate of Jiggetts v. City of Gastonia*, 128 N.C. App. 410, 497 S.E.2d 287, 291 (1998) ("To maintain a suit for breach of contract on a third-party beneficiary theory, plaintiffs must allege . . . that the contract was entered into for [their] direct, and not incidental benefit." (internal quotation marks omitted))).

Plaintiff does not allege that it or its subrogor were parties to the purported contract. (*See* Doc. 26 at 4, ¶ 17 ("Upon information and belief, a contract involving winterizing the subject property existed between [Defendant] and the party in whose care, custody and control the subject property was as of January 19, 2015.").) Plaintiff does not attach a contract to the Complaint, and states that it "cannot plead to specific provisions" because it does not have a copy. (Doc. 36 at 3.) In its Opposition to Defendant's Motion to Dismiss, Plaintiff admits that it "is not and was never a direct party to any written contract," and laments that Defendant "seeks to

take advantage of Plaintiff's position as an entity standing in the shoes of its subrogor." (*Id.*)

While the Federal Rules of Civil Procedure do not require Plaintiff to attach a copy of the contract to the Complaint, *see Stratton Grp., Ltd. v. Sprayregen*, 458 F. Supp. 1216, 1218 (S.D.N.Y. 1978), Plaintiff is required to plausibly allege that a contract existed under which it has a right to sue. Its vague allegation that a contract existed between Defendant and "the party in whose care, custody and control the subject property was as of January 19, 2015" is insufficient to support such a claim. (Doc. 26 at 4, ¶ 17.) *See, e.g.*, *Hinkle v. Cont'l Motors, Inc.*, Case No. 8:16-cv-2966-T-36MAP, 2017 WL 3131465, at *3–4 (M.D. Fl. July 24, 2017) (dismissing breach-of-contract claims where no contract was attached to complaint and allegations in complaint did not "contain sufficient facts to support a claim for an oral or written contract"); *Post*, 2010 WL 3323659, at *7 (finding that plaintiffs could not enforce alleged contract because they failed to show the existence of a contract between them and the defendants); *cf. Key Items, Inc. v. Ultima Diamonds, Inc.*, No. 09 Civ. 3729(HBP), 2010 WL 3291582, at *7 (S.D.N.Y. Aug. 17, 2010) (dismissing breach-of-contract claim because, although plaintiff properly alleged existence of a contract, it did not allege that defendants in the lawsuit were parties to the contract). As Defendant points out, Plaintiff "does not identify the party alleged to have a contract with [Defendant], nor does it explain that party's relationship to either [Plaintiff] or its subrogor." (Doc. 31 at 5–6.) Accordingly,

Plaintiff has not adequately alleged that contract existed under which it has a right to recover.

Moreover, Plaintiff's position as subrogee does not excuse its pleading requirements. *See, e.g., Cmty. Ass'n Underwriters of Am., Inc. v. SPM Maint. & Constr., Inc.*, DBDCV196029726S, 2019 WL 3219511, at *5 (Conn. Super. Ct. June 18, 2019) (granting motion to strike breach-of-contract claim where plaintiff insurer argued that it "cannot be expected to have a copy of the contract in its possession," finding that insurance carriers, as subrogees, are not "absolved from the need to specifically plead breach of contract"). To the extent Plaintiff contends that its subrogor was a party to the contract, "[i]t is not unreasonable to require the plaintiff to have contacted its insured . . . and requested a copy of any written contract, or written communications, or terms of an oral contract, in order to allow the plaintiff to sufficiently plead [breach of contract in] its complaint." *Id.* Based on the foregoing, Plaintiff has failed to adequately allege that it or its subrogor were parties to the purported contract with Defendant to winterize the subject property.

Likewise, Plaintiff has not sufficiently alleged that the parties to the contract, whoever they are, intended to confer a benefit on it or its subrogor as third-party beneficiaries. This Complaint fails to state any facts that would allow the Court to infer that the contracting parties "entered into their agreement in contemplation of conferring a benefit on the plaintiff" or its subrogor. *Morrisville Lumber Co.*, 148 Vt. at 184, 531 A.2d at 890. Instead, Plaintiff posits that its subrogor must have been an intended third-party beneficiary of the contract "[g]iven the nature of the

winterization services [Defendant] undertook." (Doc. 26 at 5, ¶ 18; *see also* Doc. 36 at 4 (stating that because the alleged contract "relate[s] to Defendant's winterization of [the subject property] . . . , it is appropriate to consider Plaintiff's subrogor . . . to be an intended third[-]party beneficiary of the contract.").) This allegation is nothing more than a bare legal conclusion and is insufficient to state a plausible breach-of-action claim. *See Dreves v. Hudson Grp. (HG) Retail, LLC*, No. 2:11–CV–00004, 2012 WL 668774, at *6 (D. Vt. Feb. 29, 2012) (dismissing breach of contract claim where plaintiff stated "bare legal conclusion that '[Plaintiff] was a third[-]party beneficiary of [the contract]'"); *Shapouri v. CitiMortgage, Inc.*, No. 12–cv–1133–JM–JMA, 2012 WL 3150781, at *3 (S.D. Cal. Aug. 1, 2012) (dismissing complaint where no contract attached because conclusory statement that contract "obligates" defendant to perform certain services "is insufficient to allow the court to determine whether [p]laintiffs are intended beneficiaries"). Because Plaintiff has not pleaded any facts that would support a finding that Plaintiff's subrogor was more than a mere incidental beneficiary, Defendant's Motion to Dismiss Plaintiff's breach-of-contract claim is GRANTED.

## IV. Breach-of-Implied-Warranties Claim

Finally, Defendant argues that Plaintiff's breach-of-implied-warranties claim should be dismissed for lack of contractual privity. (Doc. 31 at 7.) Vermont law "plainly contemplates the existence of contractual privity before a breach of implied warranty claim can be raised." *Long Trail*, 2012 VT 80, ¶ 31; *see also H. Hirschmann, Ltd. v. Green Mountain Glass, LLC*, Case No. 5:15-cv-00034, 2016 WL

3683518, at *3 (D. Vt. July 6, 2016) (explaining that in cases that "fall beyond the scope of the [Uniform Commercial Code, which concerns sale of goods], the Vermont Supreme Court has continued to enforce the privity requirement").[5]

In *Long Trail*, a condominium association sued a general contractor for breach of the implied warranties of habitability and good workmanship related to the construction of the condominium complex.  2012 VT 80, ¶ 1, 30.  However, the association had purchased the complex from the condominium developer and had no contractual relationship with the general contractor.  *Id.* ¶ 30–35.  Because there was no contractual privity between the parties, the Vermont Supreme Court held that the association had no remedy against the general contractor for breach of implied warranties.  *Id.*  Here, Plaintiff similarly asserts a claim against Defendant for breach of implied warranties of habitability and good workmanship, stemming from its alleged failure to properly winterize the subject property.  (Doc. 26 at 6, ¶¶ 26–27.)  And as in *Long Trail*, there is no contractual privity between Plaintiff (or its subrogor) and Defendant, as explained above.  Therefore, Plaintiff's claims for breach of implied warranties should be dismissed.

Although Plaintiff attempts to distinguish *Long Trail*, (*see* Doc. 36 at 5–6), it does not cite any caselaw to support its argument and fails to explain why privity

---

[5] In *H. Hirschmann*, the Court explicated when Vermont law requires contractual privity in claims for breach of warranties: (1) in cases involving an express warranty for the sale of goods under the Uniform Commercial Code (UCC), no privity is required; (2) in cases involving implied warranties for the sale of goods under the UCC, privity is required *unless* there is accompanying personal injury or physical damage; and (3) in cases outside the scope of the UCC (i.e., not involving the sale of goods), privity is required.  2016 WL 3683518, at *3.

14

should not be required in the situation at bar. Furthermore, Plaintiff's reliance on *O'Brien v. Comstock Foods, Inc.*, 125 Vt. 158, 212 A.2d 69 (1965), is unpersuasive. *O'Brien* involved the sale of goods as well as personal injury: the plaintiff was injured when she consumed glass found in a can of beans packaged by the defendant. 125 Vt. at 159; *see also H. Hirschmann*, 2016 WL 3683518, at *3 (explaining that cases involving sale of goods do not require privity when there is personal injury). The Vermont Supreme Court acknowledged that "purveyors of food and drink have . . . special responsibilities," *O'Brien*, 125 Vt. at 160, and held that because "a manufacturer or producer who markets his product in a sealed container impliedly warrants to the ultimate consumer" that the product is safe, it would be "illogic[al] and [u]njust[]" to require contractual privity, *id.* at 161. *O'Brien* is thus factually distinguishable from the instant case. Plaintiff's claims do not involve the sale of goods nor do they involve personal injury. Instead, Plaintiff's claims arise out of allegedly faulty winterization maintenance work to a condominium unit. Although they do not involve the new construction of a condominium building, Plaintiff's claims are nevertheless much more akin to those asserted in *Long Trail* than in *O'Brien*.

Accordingly, because Plaintiff has failed to establish contractual privity between it (or its subrogor) and Defendant, Defendant's Motion to Dismiss Plaintiff's claims for breach of implied warranties is GRANTED.

## **Conclusion**

For the above stated reasons, Defendant's Motion to Dismiss (Doc. 31) is GRANTED.

Dated at Burlington, in the District of Vermont, this 23rd day of July 2020.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge
