

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Country Mutual Insurance Co.,

    Plaintiff,

v.                                Civil Action No. 2:19-cv-74-jmc

Altisource Online Auction, Inc.,

    Defendant.

### AMENDED OPINION AND ORDER
(Doc. 31)[1]

Plaintiff Country Mutual Insurance Company, individually and as successor to Middlesex Mutual Assurance Company as subrogee of TPW Management LLC (TPW), brings this action against Defendant Altisource Solutions, Inc.,[2] a property management company, for negligence, breach of contract, and breach of implied warranties.[3] Plaintiff alleges that Defendant failed to winterize a property that it was contracted to winterize, causing a water leak and resulting damage to the property. (Doc. 26 at 2–3, ¶¶ 10–11.)

---

[1] The Court filed a prior version of this Opinion and Order on July 23, 2020. (Doc. 46.) However, a preliminary draft was inadvertently forwarded to the Clerk's Office for publication. Though the conclusions are the same, this Amended Opinion and Order provides a fuller analysis of the Court's ruling.

[2] Defendant is improperly named "Altisource Online Auction, Inc." in the Amended Complaint. (Doc. 26 at 1; see Doc. 31 at 1 n.1.)

[3] Because the Court has diversity jurisdiction over this matter, pursuant to 28 U.S.C. § 1332(a)(1), it must apply Vermont law in deciding all substantive issues. See Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938) ("Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state."); Omega Eng'g Inc. v. Omega, S.A., 432 F.3d 437, 443 (2d Cir. 2005) ("In a diversity case we apply the substantive law of the forum state . . . .").

Defendant has filed a Motion to Dismiss Plaintiff's Amended Complaint for failure to state a claim upon which relief may be granted (Doc. 31), and Plaintiff has filed an Opposition thereto (Doc. 36). Oral argument on the Motion was held via telephone on June 5, 2020. For the reasons stated below, the Motion to Dismiss is GRANTED.

## Factual and Procedural Background

The following facts are taken from the Amended Complaint (Doc. 26), and are accepted as true for purposes of ruling on the pending Motion to Dismiss, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plaintiff provided property insurance "via a policy in favor of" its subrogor, TPW, a condominium association responsible for a condominium located at 2680 Hartford Avenue, Unit 10, in Wilder, Vermont. (Doc. 26 at 1–2, ¶¶ 3–4.) "Sometime prior [to] January 19, 2015," Defendant was retained as "the foreclosure specialist and to winterize the subject property." (*Id.* at 2, ¶ 9.) "On or about January 19, 2015," Defendant neglected to properly winterize the property, resulting in the sprinkler system freezing and bursting, and causing a substantial water leak, which resulted in damage to the property. (*Id.* ¶ 10.) Insurance claims regarding the property damage were submitted and paid, and Plaintiff became subrogated to the recovery rights and interests of TPW as subrogor. (*Id.* at 3, ¶ 11.)

Based on these facts, on May 9, 2019, Plaintiff filed the original Complaint, bringing claims against Defendant for negligence, breach of contract, and breach of implied warranties. (Doc. 1.) Thereafter, the parties stipulated to the filing of an

2

amended complaint, which Plaintiff filed on September 30, 2019. (Doc. 26.) The Amended Complaint maintains the same claims alleged against Defendant in the original Complaint, and seeks damages "in an amount in excess of $75,000.00" for the alleged damage to the subject property, "as well as additional expenses." (*Id.* at 3, ¶ 11).

Despite alleging that, "[u]pon information and belief, *a contract involving winterizing the subject property* existed between [Defendant] and the party in whose care, custody[,] and control the subject property was as of January 19, 2015" (*id.* at 4, ¶ 17 (emphasis added)), Plaintiff has neither attached the alleged contract to the Amended Complaint nor alleged therein who the other party to the contract was. Based partially on this apparent deficiency, on November 1, 2019, Defendant filed the instant Motion to Dismiss, making three principal arguments. (Doc. 31.) First, Defendant argues that Plaintiff's negligence claim is barred by the economic loss rule because the Amended Complaint alleges neither an injury outside the scope of the alleged contract nor an independent duty of care owed by Defendant. (*Id.* at 3–4.) Second, Defendant argues that Plaintiff's breach-of-contract claim fails because the Amended Complaint does not sufficiently plead facts supporting either the existence of a contract between Plaintiff or TPW and Defendant, or Plaintiff's or TPW's right to recover as a third-party beneficiary of the alleged contract. (*Id.* at 4–7.) And third, Defendant argues that Plaintiff's breach-of-implied-warranties claim fails because, without properly alleging the existence of a contract between the parties or between TPW and Defendant, or that Plaintiff or TPW was a third-party

3

beneficiary to such a contract, there is no privity and thus no cognizable claim for breach of implied warranty. (*Id.* at 7.)

## Analysis

### I.  Legal Standard

In evaluating whether to dismiss a complaint for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), the court tests the pleading for "facial plausibility." *Ashcroft*, 556 U.S. at 678; *see Twombly*, 550 U.S. at 570 ("[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This does not require a plaintiff to provide "detailed factual allegations" to support his claims, *Twombly*, 550 U.S. at 555, but plaintiffs must allege facts that permit "more than a sheer possibility that a defendant has acted unlawfully," *Iqbal*, 556 U.S. at 678. Accordingly, allegations that "are so vague as to fail to give the defendants adequate notice of the claims against them," are subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009); *see Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.").

In assessing the adequacy of the pleadings on a Rule 12(b)(6) motion to dismiss, a court must accept all factual assertions as true and draw all reasonable inferences in favor of the plaintiff. *Lanier v. Bats Exch., Inc.*, 838 F.3d 139, 150 (2d Cir. 2016). However, "[t]hreadbare recitals of the elements of a cause of action,

4

supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *see Twombly*, 550 U.S. at 555, 557 (holding that a pleading containing "a formulaic recitation of the elements of a cause of action," "labels and conclusions," or "naked assertion[s] . . . without some further factual enhancement," does not satisfy Federal Rule of Civil Procedure 8(a)). A complaint is properly dismissed where, as a matter of law, "the allegations in [it], however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## II. Negligence Claim

Defendant argues that Plaintiff's negligence claim is barred by the "economic loss rule" (Doc. 31 at 3–4), which "prohibits recovery in tort for purely economic losses," *Long Trail House Condo. Ass'n v. Engelberth Constr., Inc.*, 2012 VT 80, ¶ 10, 192 Vt. 322, 59 A.3d 752 (quoting *EBWS, LLC v. Britly Corp.*, 2007 VT 37, ¶ 30, 181 Vt. 513, 928 A.2d 497). The rule "serves to maintain a distinction between contract and tort law." *Id.* The Vermont Supreme Court explained:

> In tort law, duties are imposed by law to protect the public from harm, whereas in contract the parties self-impose duties and protect themselves through bargaining. Thus, negligence actions are limited to those involving unanticipated physical injury, and *claimants cannot seek, through tort law, to alleviate losses incurred pursuant to a contract.*

*EBWS*, 2007 VT 37, ¶ 30 (emphasis added) (internal citation and quotation marks omitted). Stated differently, "injury to the product or property that is the subject of a contract is generally considered a disappointed economic expectation for which

5

relief lies in contract rather than tort law." *Walsh v. Cluba*, 2015 VT 2, ¶ 28, 198 Vt. 453, 117 A.3d 798. The economic loss rule does not, however, bar tort claims when "the claim is that negligent work damaged *other* property," which was not the subject of a contract. *Cincinnati Ins. Co. v. S. Vt. Sprinkler Servs., Inc.*, Case No. 5:17-cv-254, 2019 WL 5698930, at *4 (D. Vt. July 10, 2019).

Here, the Amended Complaint broadly alleges that Defendant "was retained . . . to winterize the subject property"—which is defined as "unit #10" of "the property located at 2680 Hartford Avenue in Wilder, Vermont." (Doc. 26 at 2, ¶ 9; *see id.* at 1–2, ¶ 4.) The Amended Complaint further alleges that Defendant's failure to "properly" winterize the property caused "a substantial water leak[,] resulting in damages *to the subject property*." (*Id.* at 2, ¶ 10 (emphasis added).) As alleged, the damages Plaintiff asserts that it (or its subrogor) incurred fall within the broad scope of the purported contract. *See Walsh*, 2015 VT 2, ¶ 29 (applying economic loss rule because alleged damage to leased commercial property was covered by broad scope of lease agreement). Specifically, Plaintiff alleges that Defendant's negligent conduct resulted in damage to "the subject property" (Doc. 26 at 2, ¶ 10; *see id.* at 3, ¶ 11)—the aforementioned "unit #10"—which Plaintiff asserts is precisely the subject of the contract at issue in this suit (*see id.* at 2, ¶¶ 9–10; 4, ¶ 17). The Amended Complaint does not allege that Plaintiff sustained damage to any "*other* property," which was not the subject of a contract.[4] Therefore, the economic loss rule

---

[4] At oral argument, Plaintiff indicated that a neighboring unit was also damaged as well as surrounding common areas. However, such damage is not alleged in the Amended Complaint. Therefore, the Court does not consider it for purposes of deciding the instant Motion to Dismiss.

bars Plaintiff's negligence claim. *See Springfield Hydroelectric Co. v. Copp*, 172 Vt. 311, 314, 779 A.2d 67, 70 (2001) ("As our caselaw makes clear, claimants cannot seek, through tort law, to alleviate losses incurred pursuant to a contract.").

In support of its negligence claim, Plaintiff points to two cases: *Cincinnati Insurance Co.*, 2019 WL 5698930, and *Moffitt v. Icynene*, 407 F. Supp. 2d 591 (D. Vt. 2005). But in those cases, unlike here, the respective plaintiffs alleged damage to property *outside the scope of the subject contracts*. In *Moffitt*, the relevant contract related to the installation of a particular type of insulation in the plaintiffs' home; and the plaintiffs' complaint alleged that the defendant's negligence caused "physical damage to other property," i.e., aspects of the home not covered by the parties' contract. 407 F. Supp. 2d at 601. The court held: "Since the [plaintiffs] seek to recover for physical damage to *other property* as a result of the negligent installation of the insulation and allege that the installation contributed to the damage, their negligence claim against [the defendant] is not barred [by the economic loss rule]." *Id.* (emphasis added). Similarly, in *Cincinnati Insurance*, the relevant contract concerned the testing, maintenance, and repair of a sprinkler system in an assisted-living facility; and the plaintiff's complaint alleged damage to not only the sprinkler system but also 12 rooms within the facility, which were not covered by the contract. 2019 WL 5698930, at *4. The court explained:

> [The insurance company] seeks to recover repair costs for damage to *property not covered by [the assisted-living facility's] maintenance contract*. The contract concerns the testing and repair of the sprinkler system. It would govern a claim for repair or replacement of the system under contract or warranty principles. But when water escapes and damages other elements of the building, the owner (or its subrogee) can

7

sue for tort damages. Because the 12 rooms at issue in this case must be considered "*other property*," the economic loss rule does not apply.

*Id.* (emphases added). Here, unlike in *Cincinnati Insurance* and *Moffitt*, the Amended Complaint alleges that the services the parties contracted for are of a general nature and that Plaintiff incurred damage solely to the property that was the subject of the contract. (*See* Doc. 26 ¶¶ 9–11, 13–15, 17–19, 23, 26, 28.) Therefore, Plaintiff's reliance on *Cincinnati Insurance* and *Moffitt* is unpersuasive.

Moreover, even assuming a lack of contractual privity between Plaintiff and Defendant, the economic loss rule still applies, given that the existence of privity between the parties is not a prerequisite to application of the economic loss rule. *See Long Trail*, 2012 VT 80, ¶¶ 13–14.[5] In *Long Trail*, despite the absence of privity between the plaintiff (a condominium association) and the defendant (a general contractor), the Vermont Supreme Court found that the economic loss rule precluded the plaintiff's negligence claim for damages stemming from the alleged faulty construction of the subject condominium. *Id.* ¶ 13. The court explained:

---

[5] The Vermont Supreme Court has applied the economic loss rule in the absence of contractual privity in several cases, including cases involving alleged property damage. *See Long Trail*, 2012 VT 80, ¶¶ 11–13 (applying economic loss rule to bar plaintiff condominium association's claims for damages stemming from alleged faulty construction of condominium, including water damage to walls in specific units, where no privity); *Hamill v. Pawtucket Mut. Ins. Co.*, 2005 VT 133, ¶¶ 6–8, 179 Vt. 250, 892 A.2d 226 (applying economic loss rule to bar insured homeowner's claim, alleging water damage to home, against independent adjuster hired by his insurer to investigate the insured's initial claim); *Springfield Hydroelectric Co.*, 172 Vt. at 316, 779 A.2d at 72 (applying economic loss rule to bar claims by owners of commercial hydroelectric facilities against employees of Vermont Power Exchange because "neither privity of contract, nor a special relationship, exist[ed] between [the parties] which would permit a finding of duty on the part of the [defendants]"); *but see Sullivan v. Saint-Gobain Performance Plastics Corp.*, Case No. 5:16-cv-125, 2019 WL 7282104, at *3 (D. Vt. Dec. 27, 2019) ("Vermont cases applying the economic loss rule are generally confined to claims between parties to a contract.").

8

> Privity, or lack thereof, is not the determining factor, nor are we persuaded that the [economic loss] rule's application turns on whether the parties had the opportunity to allocate risks, as the [plaintiff] suggests. Instead, the focus is more appropriately on duty . . .[, and] the existence of a duty separate and apart from a contractual duty.

*Id.*; *see Springfield Hydroelectric Co.*, 172 Vt. at 316, 779 A.2d at 71 ("The underlying analysis turns on whether there is a duty of care *independent* of any contractual obligations." (internal quotation marks omitted)). The court in *Long Trail* considered whether the parties' relationship fell within "the professional services exception" to the economic loss rule, and held that it did not. *Long Trail*, 2012 VT 80, ¶ 13 (citing *EBWS*, 2007 VT 37, ¶ 30). The court explained that, for the professional services exception to apply, the parties must have a "special relationship, which creates a duty of care *independent of contract obligations*," and that the "key is not whether one is licensed in a particular field" but rather, "the type of relationship created between the parties." *Id.* (quoting *EBWS*, 2007 VT 37, ¶ 31) (emphasis added).

In this case, Plaintiff has not alleged that Defendant owed it or its subrogor any independent, non-contractual duty. The Amended Complaint alleges merely that Defendant "owed subrogor a duty of care to . . . ensure that the subject property was winterized properly." (Doc. 26 at 3, ¶ 13.) This duty arose out of Defendant's purported contractual obligation "to winterize the subject property" (*id.* at 2, ¶ 9; *see id.* at 4, ¶ 17), and not out of any special duty of care outside its contractual obligations. Thus, despite Plaintiff's attempt to characterize the claim as negligence-based, it is plainly based on Defendant's alleged failure to fulfill its contractual duty, and the professional services exception to the economic loss rule

9

does not apply. *See Long Trail*, 2012 VT 80, ¶ 19. Because Plaintiff fails to allege that Defendant owed it or its subrogor any non-contractual duty, the economic loss rule applies. And "[w]ithout a legal duty of care, an action for negligence cannot stand." *Wentworth v. Crawford and Co.*, 174 Vt. 118, 126, 807 A.2d 351, 357 (2002)

For these reasons, Defendant's Motion to Dismiss Plaintiff's negligence claim is GRANTED.

### III. Breach-of-Contract Claim

Defendant next argues that Plaintiff's breach-of-contract claim should be dismissed because the Amended Complaint does not allege that Plaintiff or its subrogor was a party to or a third-party beneficiary of the subject contract. (Doc. 31 at 4–7.) Plaintiff responds that Defendant's Motion "seeks to take advantage of Plaintiff's position as an entity standing in the shoes of its subrogor" (Doc. 36 at 3), and asserts that discovery is in its early stages and it would be premature and contrary to "the principle that cases should be adjudicated on their merits" to dismiss the breach-of-contract claim at this early stage in the case (*id.* at 4).

In a breach-of-contract action, it is axiomatic that "to have a breach, there must be a contract." *Ben & Jerry's Homemade, Inc. v. Coronet Priscilla Ice Cream Corp.*, 921 F. Supp. 1206, 1212 (D. Vt. 1996). It is not enough to claim "in a conclusory manner" that an agreement was breached. *Rodriguez v. It's Just Lunch, Int'l*, No. 07 Civ. 9227(SHS)(KNF), 2010 WL 685009, at *10 (S.D.N.Y. Feb. 23, 2010) (internal quotation marks omitted). Rather, to sustain a claim for breach of contract, the claimant "must demonstrate the existence of an enforceable contract, through specific allegations about the parties to the agreement, the date of the

10

contract's formation, and the contract's 'major terms.'" *Id.* Moreover, the party seeking relief under the contract must generally be a party to that contract. *See Key Items, Inc. v. Ultima Diamonds, Inc.*, No. 09 Civ. 3729(HBP), 2010 WL 3291582, at *7 (S.D.N.Y. Aug. 17, 2010) (holding that allegations of mere "involve[ment]" in transactions related to contract was insufficient). "Under Vermont law, in general, no one can sue or be sued upon a contract who is a stranger to it." *Post v. Killington, Ltd.*, No. 5:07–CV–252, 2010 WL 3323659, at *7 (D. Vt. May 17, 2010) (internal quotation marks omitted); *see Rodriguez*, 2010 WL 685009, at *10 ("[A] claim that fails to allege facts sufficient to show that an enforceable contract existed between the parties is subject to dismissal." (alteration in original) (internal quotation marks omitted)).

Without attaching the subject contract to the Amended Complaint, Plaintiff alleges as follows: "Upon information and belief, a contract involving winterizing the subject property existed between [Defendant] and the party in whose care, custody[,] and control the subject property was as of January 19, 2015." (Doc. 26 at 4, ¶ 17.) In its Opposition to Defendant's Motion to Dismiss, Plaintiff states that it "is not and was never a direct party to any written contract, does not have a copy of such a document, and cannot plead to specific provisions." (Doc. 36 at 3.)

While claimants are not required to attach a copy of the alleged contract to the complaint, *see Stratton Grp., Ltd. v. Sprayregen*, 458 F. Supp. 1216, 1218 (S.D.N.Y. 1978), they must plausibly allege that a contract existed under which they have a right to sue. *See Rodriguez*, 2010 WL 685009, at *10. Here, Plaintiff's vague allegation that a contract existed between Defendant and "the party in whose care,

11

custody[,] and control the subject property was as of January 19, 2015" (Doc. 26 at 4, ¶ 17), is insufficient to support such a claim. *See Post*, 2010 WL 3323659, at *7 (plaintiffs failed to show existence of contract between them and any defendants); *Key Items*, 2010 WL 3291582, at *7 (same). As Defendant points out, the Amended Complaint "does not identify the party alleged to have a contract with [Defendant], nor does it explain that party's relationship to either [Plaintiff] or its subrogor." (Doc. 31 at 5–6.) Accordingly, Plaintiff has not adequately alleged that a contract existed under which it has a right to recover.

Despite Plaintiff's apparent assertion to the contrary (*see* Doc. 36 at 3–4), its role as subrogee to TPW[6] does not excuse its pleading requirements. *See, e.g., Cmty. Ass'n Underwriters of Am., Inc. v. SPM Maint. & Constr., LLC*, DBDCV196029726S, 2019 WL 3219511, at *5 (Conn. Super. Ct. June 18, 2019) (rejecting plaintiff insurer/subrogee's claim that it "cannot be expected to have a copy of the contract in its possession," and finding that insurance carriers, as subrogees, are not "absolved from the need to specifically plead breach of contract" (internal quotation marks omitted)). As one court explained: "It is not unreasonable to require the plaintiff to have contacted its insured . . . and requested a copy of any written contract, or written communications, or terms of an oral contract, in order to allow the plaintiff to sufficiently plead [breach of contract in] its complaint." *Id.* Accordingly, the Amended Complaint fails to adequately allege that Plaintiff or its subrogor was a party to the purported contract.

---

[6] As noted earlier, Plaintiff "provided property . . . insurance via a policy in favor of TPW," Plaintiff's subrogor. (Doc. 26 at 1, ¶ 3.)

12

Furthermore, the Amended Complaint fails to sufficiently allege that Plaintiff or its subrogor was a third-party beneficiary of the contract. (*See* Doc. 31 at 6–7.) Although generally "[a] person who is not a party to a contract has no rights under the contract," there is an exception for third-party beneficiaries. *Wells Fargo Bank, N.A. v. Sinnott*, No. 2:07 CV 169, 2009 WL 3157380, at *11 (D. Vt. Sept. 25, 2009). "In order to establish third-party beneficiary status, [the] 'plaintiff must prove that the primary purpose and intent of the [contractual] relationship was to benefit or influence the third party.'" *Id.* (second alteration in original) (quoting *Hedges v. Durrance*, 175 Vt. 588, 590, 834 A.2d 1, 4 (2003)); *see McMurphy v. State*, 171 Vt. 9, 16, 757 A.2d 1043, 1049 (2000) ("The determination of whether a party may be classified as a third-party beneficiary . . . is based on the original contracting parties' intention."); *Morrisville Lumber Co. v. Okcuoglu*, 148 Vt. 180, 184, 531 A.2d 887, 890 (1987) (a plaintiff claiming third-party beneficiary status must show that the parties "entered into their agreement in contemplation of conferring a benefit on the plaintiff"). "Because third-party beneficiary status constitutes an exception to the general rule that a contract does not grant enforceable rights to nonsignatories, a person aspiring to such status must show with special clarity that the contracting parties *intended to confer a benefit on him*." *Wells Fargo Bank*, 2009 WL 3157380, at *11 (emphasis added) (quoting *McCarthy v. Azure*, 22 F.3d 351, 362 (1st Cir. 1994)). These requirements are not satisfied "merely because a third party will benefit from performance of the contract." *Id.* (internal quotation marks omitted). "Many contracts benefit third parties, but those third parties are treated as *incidental* beneficiaries unless the contract language specifically indicates an *intent*

13

to benefit them." *Sutton v. Vt. Reg'l Ctr.*, 2019 VT 71, ¶ 66, 2019 WL 4892199, at *15 (emphases added); *see also McMurphy*, 171 Vt. at 17, 757 A.2d at 1049 (quoting *Estate of Jiggetts v. City of Gastonia*, 128 N.C. App. 410, 497 S.E.2d 287, 291 (1998) ("To maintain a suit for breach of contract on a third-party beneficiary theory, plaintiffs must allege . . . that the contract was entered into for [their] direct, and not incidental, benefit." (omission and alteration in original) (internal quotation marks omitted))).

Applied here, the Amended Complaint does not sufficiently allege that the parties to the contract intended to confer a benefit on Plaintiff or its subrogor as third-party beneficiaries. *See Morrisville Lumber Co.*, 148 Vt. at 184, 531 A.2d at 890 (no evidence that plaintiff and defendants entered into alleged agreement "in contemplation of conferring a benefit on" plaintiff). Instead, the Amended Complaint merely infers that Plaintiff's subrogor was an intended third-party beneficiary of the contract, "[g]iven the nature of the winterization services [that Defendant] undertook." (Doc. 26 at 5, ¶ 18; *see* Doc. 36 at 4 (arguing that, because the allegations contained in the Amended Complaint "relate to Defendant's winterization of [the subject property] . . . , it is appropriate to consider Plaintiff's subrogor . . . to be an intended third[-]party beneficiary of the contract").) This conclusory inference is insufficient to state a plausible breach-of-contract claim under a third-party beneficiary theory. *See Dreves v. Hudson Grp. (HG) Retail, LLC*, No. 2:11–CV–00004, 2012 WL 668774, at *6 (D. Vt. Feb. 29, 2012) (dismissing breach of contract claim where plaintiff stated "bare legal conclusion that '[Plaintiff] was a third[-]party beneficiary of [the contract]'"); *Shapouri v. CitiMortgage, Inc.*,

14

No. 12–cv–1133–JM–JMA, 2012 WL 3150781, at *3 (S.D. Cal. Aug. 1, 2012) (dismissing complaint where no contract attached, and finding that conclusory statement that contract "obligates" defendant to perform certain services "is insufficient to allow the court to determine whether [p]laintiffs are intended beneficiaries").

Because the Amended Complaint does not plead facts that would support a finding that Plaintiff or its subrogor was more than a mere incidental beneficiary of the subject contract, and given the other more general deficiencies discussed above regarding the Amended Complaint's allegations of the terms of and parties to the contract, Defendant's Motion to Dismiss Plaintiff's breach-of-contract claim is GRANTED.

## IV. Breach-of-Implied-Warranties Claim

Finally, Defendant argues that Plaintiff's breach-of-implied-warranties claim should be dismissed for lack of contractual privity. (Doc. 31 at 7.) In response, Plaintiff contends that the law Defendant cites in support of a privity requirement regarding implied warranty claims is nonbinding and inapplicable to the facts of this case. (Doc. 36 at 5.) Plaintiff further asserts that, "in furtherance of the principle that cases should be adjudicated on their merits," the breach-of-implied-warranties claim should not be dismissed. (*Id.*)

Vermont law "plainly contemplates the existence of contractual privity before a breach[-]of[-]implied[-]warranty claim can be raised." *Long Trail*, 2012 VT 80, ¶ 31; *see H. Hirschmann, Ltd. v. Green Mountain Glass, LLC*, Case No. 5:15-cv-00034, 2016 WL 3683518, at *3 (D. Vt. July 6, 2016) (explaining that in cases that

15

"fall beyond the scope of the [Uniform Commercial Code, which concerns sale of goods], the Vermont Supreme Court has continued to enforce the privity requirement"); *see also Dincher v. Marlin Firearms Co.*, 198 F.2d 821, 822 (2d Cir. 1952) (holding that, under Connecticut law, "actions for breach of implied warranties . . . may be brought only by persons who are parties to the contract alleged to have been breached or in privity with them").[7] In *Long Trail* (discussed briefly above), a condominium association sued a general contractor for breach of implied warranties of habitability and good workmanship related to the contractor's alleged defective construction and repair of the condominium complex. 2012 VT 80, ¶¶ 1, 6, 30. The Vermont Supreme Court held that the association had no remedy against the contractor for breach of implied warranties, because there was no contractual privity between these parties. *Id.* ¶¶ 30–35. Explaining that the implied warranties of good workmanship and habitability do not "pass from a developer to a subsequent purchaser in the absence of contractual privity," the Court held that "[t]he existence of implied warranties in [defective construction] cases, and the rationale underlying them, *are founded on a sale*, and there was no sale between [the parties] here." *Id.* ¶ 33 (emphasis added) (internal quotation marks omitted); *see id.* ¶ 35 ("The Association's warranty remedy lies against the entity that sold it the condominium units and implicitly warranted through the sale that the units

---

[7] In *H. Hirschmann*, the court explicated when Vermont law requires contractual privity in claims for breach of implied warranties: (1) in cases involving implied warranties for the sale of goods under the Uniform Commercial Code (UCC), privity is required *unless* there is accompanying personal injury or physical damage; and (2) in cases outside the scope of the UCC (i.e., not involving the sale of goods), privity is required. 2016 WL 3683518, at *3.

were built in a good and workmanlike manner and that they were suitable for habitation. Its remedy does not lie against [the general contractor].").

Applying *Long Trail* here, because the Amended Complaint alleges neither contractual privity nor a sale between Plaintiff (or its subrogor) and Defendant, the claim for breach of implied warranties of good workmanship and habitability should be dismissed. Plaintiff attempts to distinguish *Long Trail* (*see* Doc. 36 at 5–6), but cites no caselaw in support and fails to explain why privity should not be required on the facts of this case. Moreover, Plaintiff's citation to *O'Brien v. Comstock Foods, Inc.*, 125 Vt. 158, 212 A.2d 69 (1965), is unpersuasive, as that case involved the sale of goods as well as personal injury. *See H. Hirschmann*, 2016 WL 3683518, at *3 (explaining that cases involving sale of goods do not require privity when there is personal injury). Specifically, in *O'Brien*, 125 Vt. at 159, the plaintiff was injured when she consumed glass found in a can of string beans that had been prepared, packed, and hermetically sealed by the defendant. Acknowledging that "purveyors of food and drink have . . . special responsibilities," *id.* at 160, the Vermont Supreme Court held that, because "a manufacturer or producer who markets his product in a sealed container impliedly warrants to the ultimate consumer" that the product is safe, it would be "illogic[al] and [u]njust[]" to require contractual privity between the manufacturer/producer and "the immediate buyer," *id.* at 161. Clearly, *O'Brien* is factually distinguishable from this case, which does not involve either a sale of goods or personal injury, but rather, the allegedly faulty winterization of a condominium unit.

Accordingly, Plaintiff has failed to establish contractual privity between it (or its subrogor) and Defendant, and therefore Defendant's Motion to Dismiss Plaintiff's claims for breach of implied warranties is GRANTED.

## Conclusion

For these reasons, Defendant's Motion to Dismiss (Doc. 31) is GRANTED.

Dated at Burlington, in the District of Vermont, this 24th day of July 2020.

John M. Conroy
United States Magistrate Judge